Eric Nielson #5327
Laura Nielson #15008
G. ERIC NIELSON & ASSOCIATES
4790 S. Holladay Blvd.
Holladay, Utah 84117
Phone: (801) 424-9088
Fax:    (801) 438-0199
ericnielson@ericnielson.com
lauranielson@ericnielson.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| DIANA B., SCOTT B., and A.B., <br><br> Plaintiffs, <br><br> vs. <br><br> BLUE CROSS BLUE SHIELD OF ILLINOIS, <br><br> Defendant. | **COMPLAINT** <br><br> Case No. 2:24-cv-00003-DBP <br><br> Judge <br><br> Magistrate Judge Dustin B. Pead |

**COME NOW** Diana B., Scott B., and A.B., collectively, individually, and through their undersigned counsel, complain and allege against the above-captioned defendant as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiffs Diana B. ("Diana") and Scott B. ("Scott") are natural persons residing in Lake County, Illinois. They are covered by a fully-insured plan ("the Plan"), provided through Scott's employer, Endodontics of Evanston.

2.      Plaintiff A.B. is a resident of Lake County, Illinois. As a beneficiary of his father's health insurance plan, he received treatment at Open Sky Wilderness ("Open Sky"), a licensed

1

outdoor behavioral healthcare program in Durango, Colorado from December 23, 2019 through March 17, 2020.

3. The Plan is an employee benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et. seq.

4. This Court has jurisdiction over this matter and venue is appropriate pursuant to 29 U.S.C. §1132(e)(2) and 29 U.S.C. § 1391(c) because the appeals were written by a company located in Salt Lake City, Utah and Open Sky does business in the State of Utah.

5. Plaintiffs seek payment of A.B.'s denied claims from December 23, 2019 through March 17, 2020 for treatment rendered at Open Sky, pursuant to 29 U.S.C. §1132(a)(1)(B).

6. Plaintiffs seek injunctive relief pursuant to 29 U.S.C. §1132(a)(3) and pursuant to the Mental Health Parity and Addiction Equity Act of 2008 ("the Parity Act").

7. Plaintiffs also seek an award of prejudgment interest and attorney's fees pursuant to 29 U.S.C. §1132(g).

## FACTUAL BACKGROUND

8. A.B. has struggled with a history of F12.21 Cannabis Dependence, F14.21 Cocain Dependence, F16.11 Hallucinogen Abuse, Narcissistic Personality Features, F90.2 Attention-Deficit Hyperactivity Disorder, F39 Unspecific Mood Disorder.

9. After attempts at lower levels of care, A.B. was admitted to Open Sky on December 23, 2019.

**PRE-LITIGATION APPEAL PROCESS FOR A.B.'S TREATMENT AT OPEN SKY**

10. Claims were submitted to the Plan for A.B.'s treatment at Open Sky.

11. On July 9, 2020, Bluecross Blueshield of Illinois ("BCBS"), the claims administrator for the Plan, sent a letter denying A.B.'s treatment at Open Sky. The denial letter stated, in part:

> (1) This service is excluded under your Health Care Plan. Please refer to your benefit booklet for specific coverage information and exclusions under your contract

12. On October 30, 2020, the family submitted a Level One Member Appeal.

13. In the appeal, The family outlined the context of their plan with BCBS, emphasizing that it's a fully-insured plan subject to ERISA. They pointed out the family's rights under ERISA, including the need for a comprehensive review that considers all submitted information.

14. Plaintiffs stated the importance of compliance with ERISA regulations, emphasizing that a full understanding of the patient's mental illnesses and treatment requirements is crucial.

15. The family requested that qualified reviewers be assigned to the case and their identities disclosed, particularly in cases involving medical judgments. They highlighted the need for consultation with health care professionals.

16. Plaintiffs requested a medical or vocational expert knowledgeable about behavioral programs in Utah and Colorado, as well as one well-versed in the legal aspects of the MHPAEA.

17. The family urged BCBS to contact Dr. Michael Gass for a better understanding of intermediate outdoor behavioral health care. They requested that the appeal determination include reference to any contact made with Dr. Gass and the findings after researching this specific treatment modality.

18. The plaintiffs emphasized the importance of BCBS complying with ERISA regulations throughout the appeal process. They outlined specific requirements for BCBS's response to the level one appeal including being clear about reasons for adverse determinations.

19. The family requested physical copies of all documentation related to the initial determination and the level one appeal determination, including the names and credentials of reviewers and case notes.

20. Plaintiffs shifted the focus to the coverage available under their specific plan and outlined the plan's definition of a provider and asserted that Open Sky meets this definition due to its licenses and accreditation.

21. Plaintiffs emphasized that Open Sky's services meet the plan's requirements for reimbursable mental health care benefits.

22. The family pointed out the confusion caused by the denial of coverage for Open Sky's care when the plan's provider definition should override any exclusion.

23. Plaintiffs stated their intention to discuss concerns regarding the administration of their plan in compliance with federal mental health parity regulations.

24. The family requested a parity analysis to ensure compliance with the Parity Act, specifically asking for physical copies of documentation related to determining coverage of analogous medical and surgical care.

25. Plaintiffs emphasized the importance of receiving documentation to conduct an independent parity analysis if necessary.

26. In a letter dated December 9, 2020, BCBS upheld their denial and issued a final adverse determination, stating, in part:

> After our administrative review of the member's claim and benefit plan, we have determined that this claim has processed

accurately. According to the member's benefit plan, benefits are not available for behavioral health services provided at wilderness programs. We regret our decision could not be more favorable.

27. The family exhausted their appeal rights with BCBS.

## FIRST CAUSES OF ACTION

### (Claim for Benefits Under 29 U.S.C. §1132(a)(1)(B)), Claim for Equitable Relief Pursuant to 29 U.S.C. §1132(a), and Claim for Breach of Fiduciary Duty Pursuant to 29 U.S.C. §1132(a)(3))

28. ERISA imposes higher-than-marketplace standards on the Plan and other ERISA fiduciaries. It sets forth a special standard of care upon a plan fiduciary, namely that the administrator discharges all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits. 29 U.S.C. §1104(a)(1).

29. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that plan administrators provide a "full and fair review" of claim denials. 29 U.S.C. §1104(a)(1)(D) and §1133(2).

30. The Plan's actions or failures to act constitute a breach of its fiduciary duties to the family under 29 U.S.C. §1104 and §1133 in the following ways: 1) by failing to set forth the specific reasons for A.B.'s claim denial, written in a manner calculated to be understood by the family; 2) by failing to provide a "full and fair review," as anticipated in ERISA's claims processing regulations, of the denial of the A.B.'s claim; 3) by developing and relying upon internal practices and policies that improperly restricted coverage in contravention of Plaintiffs' health insurance plans, ERISA, and the Parity Act; and 4) by failing to discharge all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits.

5

# SECOND CAUSE OF ACTION

**(Claim for Violation of the Parity Act Under 29 U.S.C. §1132(a)(3))**

31. The Parity Act is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the Parity Act.

32. The Parity Act requires that if a group health plan provides both medical and surgical benefits as well as mental health or substance use disorder benefits, then it may not apply any "treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant ... treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(2)(i) (amended Jan. 13, 2014); *see also* IFRs Under the Parity Act, 75 Fed. Reg. at 5413.

33. The Parity Act also requires that if a plan "provides mental health or substance use disorder benefits in any classification of benefits..., mental health or substance use disorder benefits must be provided in every classification in which medical/surgical benefits are provided." 29 C.F.R. § 2590.712(c)(2)(ii).

34. Impermissible nonquantitative treatment limitations under the Parity Act include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

35. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan restricted for A.B.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does the Plan restrict coverage of medical/surgical conditions based on

medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner the Plan restricted coverage of treatment for A.B. at Open Sky.

36. Specifically, the Plan's reviewers utilized internal processes and procedures that may have placed a limitation on the scope of services available for intermediate behavioral health care, while not limiting the scope of services available for intermediate medical or surgical benefits.

37. When the Plan receives claims for intermediate-level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. The Plan evaluated A.B.'s mental health claims using criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

38. In this manner, the Defendant violates 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the criteria utilized by the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

39. The violations of the Parity Act by the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

40. A declaration that the actions of the Defendant violates the Parity Act;

41. An injunction ordering the Defendant to cease violating the Parity Act and requiring compliance with the statute;

42. An order requiring the reformation of the terms of the Plan and the criteria utilized by the Defendant to interpret and apply the terms of the Plan to ensure compliance with the Parity Act;

43. An order requiring disgorgement of funds obtained by or retained by the Defendant as a result of their violations of the Parity Act;

44. An order requiring an accounting by the Defendant of the funds wrongly withheld from participants and beneficiaries of the Plan as a result of the Defendant's violations of the Parity Act;

45. An order based on the equitable remedy of surcharge requiring the Defendant to provide payment to the Plaintiffs as make-whole relief for their loss;

46. An order equitably estopping the Defendant from denying the Plaintiffs' claims in violation of the Parity Act; and

47. An order providing restitution from the Defendant to the Plaintiffs for their loss arising out of the Defendant's violation of the Parity Act.

48. 45. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A.

49. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

## **RELIEF**

50. WHEREFORE, the Plaintiffs seek relief as follows:

51. Judgment in the total amount that is owed for A.B.'s medically necessary treatment at Open Sky under the terms of the Plan, plus pre- and post-judgment interest to the date of payment;

52. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

53. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

54. For such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 2nd day of January, 2024.

G. ERIC NIELSON & ASSOCIATES

*/s/ Laura Nielson*
Laura Nielson
*Attorney for Plaintiffs*